## PROPRIETORS OF THE CHURCH IN BRATTLE SQUARE *vs.* LEWIS BULLARD.

**A.** sold a pew to B., and the parish conveyed it to B. with warranty, having a bond from A. to save the parish harmless, " if any person or persons should establish their title to said pew against the said obligor or his assigns." C. claimed the pew, and he and B. without notice to A, submitted the question of title to arbitrators, who de– termined that the pew belonged to C., and that B. should make to C. a deed convey– ing all his (B.'s) right in the same ; and judgment was rendered on this award. C. called upon the parish for indemnity under their covenant of warranty, and the parish indemnified him without suit, and thereupon commenced an action against A. on his bond. *Held,* that the title of C. to the pew was not *established*, within the meaning of the bond, and that A. might show in defence, that the title was not in C.

Evidence of adverse possession for twenty years or more warrants a presumption that the possessor had a deed of the property possessed, and that all acts, necessary to give the deed effect, were duly done.

In the trial of a question of title, where the defendant relies on long possession, he may give in evidence, in order to prove that the possession was adverse and under claim of title, the declarations of the party, through whom alone the plaintiff claims or can establish his claim, that such party had sold the property in question to the person who was in possession, and under whom the defendant claims.

THIS case came before the court on the report of *Putnam*, J. before whom it was tried. The facts proved, and the grounds taken in argument, fully appear in the opinion of the chief justice.

*I. J. Austin*, for the plaintiffs.

*G. W. Phillips*, for the defendant.

SHAW, C. J. Debt on bond executed by the defendant to the plaintiffs. The condition recites, that the plaintiffs had executed to the defendant a deed of a pew, in usual form, and the bond is conditioned, that if any person or persons should es– tablish their title to said pew, against said Bullard or his assigns, said Bullard would indemnify the plaintiffs against their warranty and all claims for damages.

It appears, that according to the by-laws and usages of the society, when a regular transfer is to be made of a pew, the proprietor surrenders and releases his pew to the parish, and then the parish, by their committee, make a new deed to the ap– pointee of the party surrendering. Thus each proprietor ordi‑ narily holds under a deed directly from the parish.

It appears that the occasion of giving the bond declared on was this : The defendant had levied an execution on the pew, in 1820, as the property of one Samuel Spear, and, pews in Boston be'ng considered personal property, he caused the same to be sold at auction, and became the purchaser.   Whether this levy and sale constituted a title good in law or not, it was conformable to the usage and by-laws, and therefore the defendant applied to the committee for a deed in the usual form, which they gave him, taking the bond in question for their indemnity against any outstanding paramount title.

It further appears, that the defendant, afterwards, having con tracted to sell the pew to Robert Hooper, surrendered the pew in the usual form, to the parish, and requested the committee to execute a new deed to Hooper, which they did, in the usual form, including covenants of warranty.

It also appears, that whilst Hooper held the pew under his deed, a claim was made for it, by William H. Spear, under a title paramount to that of Bullard, the defendant, and to that of Samuel Spear, as whose property the defendant levied his execution upon it.   This question was submitted by the parties to arbitration, the referees decided in favor of Spear, and judgment was entered in his favor, on the award, by this court. *Spear v. Hooper,* 22 Pick. 144.

It further appears, that after this judgment against Hooper, he called on the plaintiffs upon their covenant of warranty ; thereupon they paid him the value of the pew, and now bring this action against the defendant for an indemnity, according to the condition of the bond.   Several breaches are assigned, but the *gravamen* of the whole is, that Wm. H. Spear had established a better title to the pew than the defendant's, by means of which, Hooper, an assignee of the defendant, had been ousted ; that the plaintiffs had been charged on their warranty and became obliged to pay, and that the defendant had not indemnified them.

To maintain the issue on the part of the plaintiffs, they offered in evidence the judgment of Spear against Hooper, and insisted that it was conclusive evidence of a paramount title in Spear. The evidence was admitted as competent, but not conclusive of

the title.   We think this judgment was competent evidence, be-
cause the condition of the bond was that any person should
*establish* a better title.   It was not enough for the plaintiffs to
prove, that an outstanding dormant title existed, but that a claim
had been made and acted upon, and enforced.   To prove this,
the judgment was competent.

But the plaintiffs insisted that it was conclusive upon the
question of title, and excepted to the opinion of the judge who
held it otherwise.   The question now is, whether that decision
was right.

Without considering whether an award of arbitrators, upon
the question of title, would have the same force and effect in this
respect, as a judgment in due course of law, we are of opinion
that a judgment would not be conclusive on the question of title,
and binding on the defendant, because he had no notice of it,
and no opportunity afforded him, in that action, to defend the
title.   If the plaintiffs had notice of the action, and were called
on to defend Hooper's title, in the suit of Spear against him,
they could have given the like notice to the defendant ; if they
had not such notice, then they yielded to a judgment by which
they were not bound, and paid the money in their own wrong.
Had the plaintiffs waited till they were sued by Hooper, they
might then have given the defendant notice of the action, and
called in his aid to defend the title ; then if judgment had been
rendered against them, he would have been bound by it.   The
purpose of such notice is obvious.   It is not merely information
that such an action is pending ; but it is in the nature of a prayer
in aid.   The warrantor may know of facts, or be in possession
of evidence, not known to the party sued, which would furnish
the means of a successful defence.   If he has no such means,
there is no reason why the judgment should not be conclusive
against him.

It was then argued, that although this be the general rule, yet
that the defendant, by the form and effect of his obligation,
agreed to be bound by any judgment on the question of title.
But we cannot put that construction on the bond.   The condi
tion is not, if any person shall recover a judgment on the title ;

but if any person shall *establish* his title. The plaintiffs are bound to prove that such a title has been established, by legal evidence. To do this, they must give in evidence the common proofs of title, or a judgment to which the defendant was party or privy. It comes back therefore to the same question, whether this was such a judgment.

2. But supposing that a warrantor is not bound to pay on his warranty, until a judgment against himself, or a judgment against his grantee, by which he is bound; yet he may do so. If he is satisfied that the title which he has warranted is bad, he is not bound to await the result of a suit, but may yield to the paramount title, and pay the money on his warranty, and then look to his warrantor, or any person bound to indemnify him. But the difference is this ; he takes upon himself to prove that the title to which he yielded was paramount, and could not be resisted. *Hamilton* v. *Cutts*, 4 Mass. 352, 353. So here the burden of proof was upon the plaintiffs to prove that the title of William H. Spear, to which they yielded, was older and better than that of the defendant, derived, by levy and sale on execution, from Samuel Spear. This the plaintiffs at the trial undertook to do, and thence arises a further question.

It was intimated in the course of the argument, that under the usages and by-laws of this society, no valid title could be proved, except by a deed from the parish ; and the judge at the trial was requested by the plaintiffs so to instruct the jury. But it is manifest that if this were so, the plaintiffs, who have the burden of proof, must fail. They are to prove the title of William H. Spear ; to do it, they show a deed from the parish to Governor Hancock, sixty years ago, and various devises, descents and assignments, by which a derivative title is traced to William H. Spear, but no deed from the parish to him. On the contrary, the title of the defendant is proved by deeds from the parish, on the giving of which, this bond of indemnity was given by the defendant.

Supposing, however, that notwithstanding the by-laws, a qualified title may be proved, by other modes by which property passes by the general rules of law, as by devise, descent, as-

signment and attachment — (*Sargent* v. *Franklin Ins. Co.* 8 Pick. 90.) — it is contended that a good *primâ facie* title is shown in William H. Spear, and a better legal title must be proved, to rebut it. This we think is true; but such superior title may be shown by the same species of evidence, as that relied on to establish the *primâ facie* case. It is then a comparison of titles, between parties who did not derive title by a regular deed from the parish, pursuant to the by-laws.

The plaintiffs then offered evidence to show a deed to Governor Hancock; a distribution of his estate, in which this pew was assigned to his sister and heir, Mary Perkins; and a distribution of Mary Perkins's estate, by which it was assigned to her daughter Mary Perkins, afterwards Mary Dunbar. Both parties claim under Mary Dunbar. The plaintiffs contend that it remained her property till her decease, and passed by the residuary clause of her will to her nephews and nieces, of whom William H. Spear was one, and that he obtained the right of the others by assignment.

The defendant contends, that Mary Dunbar, in her lifetime, transferred the pew to Samuel Spear, who had married her sister, and that it was the property of Samuel Spear, when he levied his execution upon it.

The defendant offered evidence tending to show an adverse, exclusive possession more than twenty years, on the part of Samuel Spear and those claiming under him; and the judge decided that such evidence was admissible, to raise a presumption of a lost and non-appearing deed of assignment. The court are of opinion that this evidence was competent, and if sufficient to satisfy a jury of the fact, it was legal proof of a grant by deed. *Melvin* v. *Proprietors of Locks & Canals*, 17 Pick. 255.

It was objected that such a deed must have been recorded in the parish books. But it is to be considered, that when a lost deed is rightfully presumed from circumstances, they will also raise the presumption, that whatever was necessary to give the deed effect, as acknowledgment, registration, or other act, was duly done.

Testimony was received of declarations made by Mrs. Dun-

bar, in her life time, that she had sold the pew to Samuel Spear. This was objected to, as tending to prove a conveyance by parol, or as hearsay. But in order to consider whether the evidence was competent, it is necessary to consider what was the point in controversy. That Spear sat in the pew was proved ; but it was contended, that as Mrs. Dunbar was a near connexion and lived in his family, his occupation was permissive and not adverse ; but it was contended, on the other side, that it was exclusive and adverse. In this state of the proof, we are of opinion that those declarations were competent ; not as evidence of a sale, but as evidence that the actual possession of Spear was adverse and under a claim of title. It was not hearsay, because they were the declarations of the person under whom William H. Spear claimed title, made at a time when, according to the claim of title made by him and through whom alone he could establish that claim, she was the legal owner of the estate.

On the point that the verdict was against evidence, we do not think there is sufficient ground to set aside the verdict. The court are therefore of opinion, that the directions were right, and that there must be

*Judgment on the verdict.*